NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DANIEL GARY LOHMEIER, *Appellant*.

No. 1 CA-CR 21-0561
FILED 4-18-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR201801262
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Attorneys for Freedom Law Firm, Chandler
By Rachel A. Moss
*Counsel for Appellant*

<hr>

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Angela K. Paton and Judge D. Steven Williams joined.

<hr>

**P E R K I N S**, Judge:

¶1        Daniel Gary Lohmeier appeals his conviction and sentence for disorderly conduct. He argues the superior court incorrectly refused to dismiss the indictment based on the State's failure to preserve a 911 call and alleged prosecutorial vindictiveness. He also challenges (1) the court's denial of his motion for a directed verdict on the charged offense of aggravated assault, (2) the sufficiency of the evidence to support his conviction on the lesser-included offense of disorderly conduct, and (3) the court's decision to give the lesser-included offense jury instruction. Finally, he asserts the court erred in denying his motion for a new trial. For reasons that follow, we affirm his conviction and sentence.

## FACTS AND PROCEDURAL BACKGROUND

¶2        We view the facts in the light most favorable to upholding the verdict, resolving all inferences against Lohmeier. *See State v. Reaves*, 252 Ariz. 553, 558, ¶ 2 (App. 2022). Victim was driving to an animal hospital when he became involved in a road-rage incident with Lohmeier, who was driving an SUV and traveling with his wife Theresa. After Lohmeier began tailgating Victim, Victim tapped his breaks a few times to get Lohmeier to "back off a little bit." Moments later, Lohmeier suddenly pulled in front of Victim and stopped, causing Victim to "slam on [his] brakes." Lohmeier brandished a firearm. "[S]taring down the barrel of [Lohmeier's] gun," Victim was "scared to death" and "shaking like a leaf."

¶3        Lohmeier soon lowered his weapon, drove away, and stopped at a nearby red light. At that point, Victim took a photograph of Lohmeier's SUV and its license plate. Victim arrived at the animal hospital about five minutes later and called 911 to report the incident. He told the dispatcher that Lohmeier had pointed a gun at him.

¶4        A police officer interviewed Victim that day about the incident. Based on the SUV's description and license-plate number, the officer learned that Lohmeier owned the SUV and called him the next day.

Lohmeier immediately asked the officer if he was following up on the 911 call that Theresa had made during the encounter. In recounting the incident to the officer, Lohmeier said that Victim had been "trying to run him off the road," so he pulled in front of Victim's truck and "raised a firearm" to warn Victim "that he was going to defend himself." He denied pointing his gun at Victim.

¶5        The Prescott City Prosecutor's office initially filed misdemeanor charges against Lohmeier but later dismissed its case after the Yavapai County Attorney's Office elected to pursue felony charges. Following the dismissal, a grand jury indicted Lohmeier with aggravated assault, a class three dangerous felony, for intentionally placing Victim in reasonable apprehension of imminent physical injury by using a deadly weapon or dangerous instrument in violation of A.R.S. §§ 13-1203 and 13-1204(A)(2). In the interim, the State destroyed the recording of Theresa's 911 call consistent with department policy.

¶6        Before trial, Lohmeier moved to dismiss the indictment on two grounds at issue here: (1) the State's failure to preserve Theresa's 911 call constituted a due-process violation; and (2) the county attorney's prosecutorial vindictiveness by initiating felony charges after Lohmeier refused to plead guilty in the misdemeanor case.

¶7        The superior court denied Lohmeier's dismissal motions. On the lost 911 call issue, the court found no evidence of bad faith and that Lohmeier failed to demonstrate actual prejudice from the destruction of the recording.

¶8        The court granted Lohmeier's alternative request to instruct the jury that, if it found the State's explanation inadequate, it could draw an adverse inference against the State based on its failure to preserve the 911 recording ("*Willits* instruction"). *See State v. Willits*, 96 Ariz. 184 (1964). Regarding the vindictive-prosecution claim, the court found that Lohmeier had failed to make "the prima facie showing of vindictiveness[.]"

¶9        At trial, Lohmeier called Theresa to the stand, and she testified that Victim repeatedly cut them off and "brake checked" them. During the encounter, she handed Lohmeier his gun and called 911. Lohmeier took the gun and "placed it on top of the steering wheel up towards the ceiling of the car" to convey that they "were willing to defend [them]selves and to deescalate the situation." Theresa maintained that Lohmeier did not point the gun at Victim. She also explained that in the 911 call, she reported that they "were involved in a road rage incident where a

yellow truck has come to a complete stop in the middle of traffic and that [they] were scared for [their] lives. [And they] were trapped at a red light with [Victim]." She confirmed that the dispatch log of her call—which had been admitted into evidence—accurately described her report.

**¶10** The superior court granted the State's unopposed request to instruct the jury on the lesser-included offense of disorderly conduct under A.R.S. § 13-2904(A)(6). The final jury instructions included the disorderly-conduct instruction and the *Willits* instruction.

**¶11** The jury acquitted Lohmeier of aggravated assault but found him guilty of disorderly conduct. The jury separately found the offense was "dangerous" because it involved "the use or threatening exhibition of a deadly weapon or dangerous instrument."

**¶12** Following the verdict, Lohmeier moved for a new trial under Arizona Rule of Criminal Procedure ("Rule") 24.1(c)(1), arguing the verdict was contrary to Arizona law and the weight of the evidence. To support his request, he submitted an affidavit from the jury foreperson, which included comments that the jury determined (1) he had placed the gun "against the steering wheel with the barrel pointed toward the roof of his vehicle[,]" (2) he had not pointed his gun at Victim, and (3) he had not "placed his finger on the trigger" or "cocked the handgun." The superior court denied the motion, explaining that after it "considered the evidence presented during the trial, the applicable law, and the Jury's verdict[,]" it found no reason to upset the verdict.

**¶13** The superior court sentenced Lohmeier to the minimum term of 1.5 years' imprisonment. We have jurisdiction over Lohmeier's timely appeal. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A).

## DISCUSSION

### I. Motions to Dismiss

**¶14** Lohmeier argues the superior court erred by denying his motions to dismiss the indictment. We review such rulings for an abuse of discretion. *State v. Hulsey*, 243 Ariz. 367, 377, ¶ 17 (2018) (failure to preserve evidence); *State v. Mieg*, 225 Ariz. 445, 447, ¶ 9 (App. 2010) (prosecutorial vindictiveness). "We defer to a trial court's findings of fact when they are supported by the record and not clearly erroneous, but review legal conclusions de novo." *Hulsey*, 243 Ariz. at 377, ¶ 17 (citation omitted).

### A. Failure to Preserve Theresa's 911 Call

**¶15** To protect a criminal defendant's due process right to present a complete defense, "the Supreme Court has developed what might loosely be called the area of constitutionally guaranteed access to evidence." *State v. Goudeau*, 239 Ariz. 421, 441–42, ¶ 43 (2016) (quotation omitted). In deciding whether the State's failure to preserve evidence violates due process, the "critical distinction . . . is between material exculpatory evidence and potentially useful evidence." *State v. Speer*, 221 Ariz. 449, 457, ¶ 37 (2009) (quotation omitted).

**¶16** Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before [it] was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *State v. Dunlap*, 187 Ariz. 441, 452 (App. 1996) (quotation omitted). Materiality also requires a defendant to demonstrate a reasonable probability that the result of the trial would have been different had the lost evidence been properly disclosed, meaning the error necessarily had a "substantial and injurious effect or influence in determining the jury's verdict." *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995) (quotation omitted). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).

**¶17** The loss of material exculpatory evidence violates due process regardless of whether the State acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 55, 57 (1988). "The [S]tate's duty to preserve is limited to material evidence that might be expected to play a significant role in the suspect's defense." *Dunlap*, 187 Ariz. at 452 (quotation omitted).

**¶18** The failure to preserve potentially useful evidence, on the other hand, "does not constitute a denial of due process of law unless the defendant can show bad faith on the part of the police." *State v. Lehr*, 227 Ariz. 140, 150, ¶ 41 (2011) (quotation omitted). "Absent bad faith, the inference that the evidence may be exculpatory is not strong enough to dismiss the case. It is enough to let the jury decide whether to draw such an inference." *Id.* (quotation omitted). Whether the prosecution acted in bad faith "necessarily turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Dunlap*, 187 Ariz. at 452 (quotation omitted).

¶19        Lohmeier has satisfied none of the applicable criteria to establish a due process violation based on constitutional materiality. He contends the 911 call constituted material evidence because it would have bolstered Theresa's trial testimony, alleging its "*evidentiary value* was apparent before the police destroyed it." (Emphasis added.)  But Theresa's 911 call does not establish an exculpatory fact given her ability to testify to the same facts she asserted during the call. Similarly, the recording was not irreplaceable in light of Theresa's testimony combined with the available dispatch log. We agree with the superior court that, although Theresa's testimony at trial "may not be as impactful as the 911 call, the lack of recording does not rise to the level of a due process violation requiring dismissal of the charges."

¶20        Lohmeier asserts that even if the evidence lacked constitutional materiality, the 911 call was potentially useful to his defense, and the superior court "should have inferred bad faith from the fact that the Prescott Police Department destroyed [Theresa's] 911 call but consciously chose to retain [Victim's] 911 call." We disagree.

¶21        Assuming the 911 call might have aided Lohmeier's defense, the destruction of evidence according to an established procedure generally precludes a bad-faith finding. *See California v. Trombetta*, 467 U.S. 479, 488 (1984) (finding the police's destruction of potentially exculpatory evidence according to "normal practice" did not amount to bad faith). Here, the State established that destruction of the recording occurred consistent with its preservation policy.

¶22        Lohmeier contends that preserving Victim's 911 call and not Theresa's shows bad faith. But the police still retained the dispatch log of Theresa's 911 call. The court admitted the dispatch log and the contents matched Theresa's testimony at trial. The State also claimed the police did not discover the calls were related to the same incident to preserve the call. Lohmeier failed to prove the intentional or malicious intent required to sustain a bad-faith showing. *See State v. Youngblood*, 173 Ariz. 502, 506 (1993) (explaining bad faith means "a conscious, intentional or malicious failure to preserve evidence"); *cf. Arizona v. Youngblood*, 488 U.S. at 58–59 (losing evidence negligently is insufficient to show bad faith).

¶23        Under these circumstances, the *Willits* instruction sufficiently addressed the destroyed evidence. *Youngblood*, 173 Ariz. at 507. The superior court did not abuse its discretion in declining to dismiss the indictment based on the loss of the 911 call.

## B. Prosecutorial Vindictiveness

¶24        A prosecutor's charging decision is vindictive when it is designed to penalize a defendant for exercising a legally protected right. *State v. Brun*, 190 Ariz. 505, 506 (App. 1997). Defendants may demonstrate prosecutorial vindictiveness in two ways. *Mieg*, 225 Ariz. at 447, ¶ 11. First, they may prove actual vindictiveness based on objective evidence that a prosecutor acted to punish them for asserting their rights. *Id.* Lohmeier has never alleged that the State acted with actual vindictiveness in his case. Second, as applicable here, defendants "may rely on a presumption of vindictiveness if the circumstances establish a realistic likelihood of vindictiveness." *Id.* at 448, ¶ 11 (quotation omitted). If a defendant makes a *prima facie* showing that the charging decision was more likely than not attributable to prosecutorial vindictiveness, the burden shifts to the State to overcome that presumption. *Id.* at ¶ 12.

¶25        "To make the requisite *prima facie* showing in the pretrial context, a defendant must do more than prove that the [S]tate increased charges after the defendant exercised a legal right." *State v. Dansdill*, 246 Ariz. 593, 598, ¶ 8 (App. 2019) (quotations omitted). Additional facts must exist, besides the increased charges, to show the State's action was meant to punish the defendant for asserting legal rights. *Id.* (citation omitted). "[A] prosecutor can legitimately re-charge a defendant in the pretrial context for various reasons, including when in the course of preparing a case for trial . . . he simply . . . realize[s] that information possessed by the [S]tate has a broader significance." *Id.* at 599, ¶ 12 (quotation omitted).

¶26        Although Lohmeier maintains "the prosecutor's actions and statements support[] a presumption of vindictiveness," he does not identify any "[a]dditional facts" supporting his contention. *See id.* at 598, ¶ 8. His failure to do so disposes of his conclusory argument. *See id.*

¶27        The superior court implicitly accepted the State's explanation for its charging decision, and we defer to that credibility determination. *See id.* at ¶ 11 ("[T]he question of the prosecutor's credibility regarding his motivation was one for the trial judge, not for this court."). Even if we were to assume his refusal to plead guilty in the misdemeanor case motivated the county's charging decision, his claim would still fail. *See id.* at ¶ 9 n.3 ("Just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.") (quotation omitted). The superior court

did not err in denying Lohmeier's motion to dismiss based on prosecutorial vindictiveness.

## II.    Motion for a Judgment of Acquittal, Sufficiency of the Evidence, and Lesser-Included Offense Instruction

### A.  Motion for a Judgment of Acquittal

**¶28**      After the State's case-in-chief, Lohmeier moved for a judgment of acquittal on the charged offense of aggravated assault. He argues the superior court incorrectly denied his motion, a ruling we generally review *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Because the jury acquitted him of aggravated assault, the issue is moot and he may not raise it on appeal. *See State v. Linden*, 136 Ariz. 129, 136 (App. 1983) (precluding the defendant from challenging the denial of a directed-verdict motion on an acquitted charge). Thus, we do not address his claim.

### B.  Sufficiency of the Evidence

**¶29**      Lohmeier contests the sufficiency of the evidence to support his disorderly-conduct conviction. We review his claim *de novo*. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). To obtain relief, Lohmeier must show the record lacks "substantial evidence" supporting his conviction. *Id.* "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Id.* (quotation omitted).

**¶30**      "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quotation omitted). We do not assess credibility, weigh evidence, or resolve evidentiary conflicts in our review; the jury alone decides those issues. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27 (2007).

**¶31**      Under Section 13-2904(A)(6), "[a] person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [r]ecklessly handles, displays or discharges a deadly weapon or dangerous instrument." "Intentionally" means "a person's objective is to cause that result or to engage in that conduct"; "knowingly" means "a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(a), (b). "Recklessly" means "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance

exists." A.R.S. § 13-105(10)(c). "The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.* An offense involving the "use or threatening exhibition of a deadly weapon or dangerous instrument" is a "[d]angerous offense." A.R.S. § 13-105(13).

¶32 Here, Victim testified that Lohmeier pursued him, cut him off, and pointed a gun at him, causing him to fear for his life. That testimony alone constitutes substantial evidence to sustain the verdict. *See State v. Montano*, 121 Ariz. 147, 149 (App. 1978) (explaining one credible witness is sufficient to support a conviction). Furthermore, Lohmeier admitted that he pulled his SUV in front of Victim's truck and showed his gun to Victim to convey that he would protect himself and Theresa. Theresa also acknowledged that Lohmeier displayed his gun to abate the conflict. The record contains ample evidence from which a reasonable jury could infer Lohmeier (1) recklessly displayed his gun with the intent to disturb Victim's peace or the knowledge that he did so, and (2) his act amounted to a threatening exhibition of the weapon.

¶33 Nonetheless, Lohmeier cites Theresa's testimony and the foreperson's affidavit to argue his act was not reckless because he allegedly "rested the handgun against the steering wheel of his vehicle with the barrel pointed toward the roof" and not at Victim. But his disorderly-conduct conviction does not require proof that he pointed the firearm at Victim. Nor does any conflict between Theresa's and Victim's testimony undermine the verdict, given that settling evidentiary disputes is exclusively the jury's province. Finally, the foreperson's affidavit is not trial evidence; thus, we do not consider it.

¶34 Equally unavailing is Lohmeier's assertion that "one's peace cannot be disturbed" if one is already engaged in an altercation. Our supreme court has held that Section 13-2904(A)(6) "does not require that one actually disturb the peace of another through certain acts"; instead, it "requires the commission of certain acts with intent to disturb the peace . . . or with knowledge of doing so." *State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001) (quotation omitted). In so concluding, the court rejected the proposition that Section 13-2904(A)(6) "requires a finding that the victim was in fact at peace when the conduct occurred." *Id.* at 68–69, ¶¶ 4–5. Lohmeier's sufficiency-of-the-evidence challenge is meritless.

### C. Jury Instruction

**¶35**      Lohmeier further insists that because he asserted an "all or nothing" defense, the superior court fundamentally erred by giving a lesser-included offense instruction. To prevail under fundamental-error review, he carries the burden to show trial error exists, the error is fundamental, and the error resulted in prejudice. *State v. Riley*, 248 Ariz. 154, 170, ¶ 24 (2020).

**¶36**      Disorderly conduct under Section 13-2904(A)(6) is a lesser-included offense of aggravated assault as charged in this case. *State v. Miranda*, 198 Ariz. 426, 429, ¶ 13 (App. 2000). The distinguishing element between those offenses is "the intent to place the victim in reasonable apprehension of imminent physical injury." *State v. Burdick*, 211 Ariz. 583, 586, ¶ 9 (App. 2005). Courts must instruct the jury on a lesser-included offense when it is "necessarily included" in the greater offense. *State v. Wall*, 212 Ariz. 1, 3, ¶ 14 (2006). "Necessarily included" means the offense is "lesser included *and* the evidence is sufficient to support giving the instruction." *Id.* Evidence is sufficient in this context when a reasonable jury could find (1) "the State failed to prove an element of the greater offense" and (2) the defendant committed only the lesser offense. *Id.* at 4, ¶ 18.

**¶37**      Both conditions are met in this case. A rational juror could conclude that, when Lohmeier brandished his gun, he did not intentionally cause Victim reasonable apprehension of imminent physical injury but only consciously disregarded the substantial and unjustifiable risk that he would disturb Victim's peace, acting with the requisite intent or knowledge to do so. *See State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998) ("A party is entitled to an instruction on any theory reasonably supported by the evidence."). His assertion of an all-or-nothing defense does not compel a different conclusion. *See Wall*, 212 Ariz. at 6, ¶ 28 (explaining there is no "bright-line rule that a lesser-included offense instruction is never proper if a defendant has asserted an all-or-nothing defense"). Lohmeier has shown no error, fundamental or otherwise.

## III.    Motion for a New Trial

**¶38**      Lohmeier argues the superior court incorrectly denied his new trial motion. We review the court's decision for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 408, ¶ 74 (2013).

**¶39**      The superior court sits as the so-called "thirteenth juror" when deciding motions for new trial under Rule 24.1(c)(1) and may independently weigh the evidence and determine the witnesses' credibility.

*State v. Fischer*, 242 Ariz. 44, 49–50, ¶¶ 14–17 (2017). "If, after full consideration of the case, the court is satisfied that the verdict was contrary to the weight of the evidence, it may set the verdict aside[.]" *Id.* at 49–50, ¶ 17. We review only "whether, resolving every conflict in the evidence in support of the order, substantial evidence supports the trial judge's order." *Id.* at 52, ¶ 28. "A denial of a motion for new trial will be reversed only when there is an affirmative showing that the trial court abused its discretion and acted arbitrarily." *State v. Mincey*, 141 Ariz. 425, 432 (1984).

¶40    Lohmeier has made no such showing here. His new trial request relied, in relevant part, on statements contained in the foreperson's affidavit. But "juror affidavits in support of a motion for new trial are admissible only on the issues of jury misconduct specified in Rule 24.1(c)(3)," which Lohmeier has never alleged. *State v. Walker*, 181 Ariz. 475, 483–84 (App. 1995). Even then, Rule 24.1(d) bars consideration of testimony or an affidavit relating "to the subjective motives or mental processes leading a juror to agree or disagree with the verdict." *State v. Nelson*, 229 Ariz. 180, 190–91, ¶ 47 (2012) (citing Ariz. R. Crim. P. 24.1(d)).

¶41    The superior court properly refused to consider the affidavit's information in deciding the Rule 24.1(c)(1) motion. Indeed, had the superior court granted his motion based on the foreperson's comments, it would have abused its discretion. *See State v. Melcher*, 15 Ariz. App. 157, 161 (1971) (finding an abuse of discretion when the superior court granted a new trial based on a juror's affidavit impeaching the verdict).

¶42    Lohmeier presents no argument untethered to the foreperson's statements, and thus gives us no basis to disturb the superior court's denial of his motion for a new trial.

## CONCLUSION

¶43    We affirm.



AMY M. WOOD • Clerk of the Court
FILED: CC