IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BOB DON PROSISE, *Petitioner*,

*v.*

THE HONORABLE CHRIS L KOTTKE, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of YAVAPAI,
*Respondent Judge,*

STATE OF ARIZONA, *Real Party in Interest.*

No. 1 CA-SA 20-0014
FILED 6-9-2020

Petition for Special Action from the Superior Court in Yavapai County
No. P1300CR201901161
The Honorable Christopher L. Kottke, Judge *Pro Tempore*

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Stanley M. Slonaker, Phoenix
By Stanley M. Slonaker
*Counsel for Petitioner*

Chino Valley Prosecutor's Office, Chino Valley
By Cody W. Johnson, Daniel Woolston
*Counsel for Real Party in Interest*

## OPINION

Judge David B. Gass delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

**G A S S**, Judge:

**¶1**　　　　Petitioner Bob Don Prosise seeks special action relief from his misdemeanor disorderly conduct conviction and sentence. In *In re Julio L.*, the Arizona Supreme Court held a defendant may not be convicted of disorderly conduct against an individual under A.R.S. § 13-2904.A.1 absent proof the alleged victim's peace was disturbed. *See* 197 Ariz. 1, 4, ¶ 13 (2000). In this opinion, this court rejects the State's contention that the Arizona Supreme Court eliminated that requirement in a case it issued less than a year later. *See State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001) (interpreting A.R.S. § 13-2904.A.6).

**¶2**　　　　Consistent with *Julio L.*, when the State charges a defendant with "seriously disruptive behavior" against a specific individual under § 13-2904.A.1, it must "prove that [the victim's] peace was indeed disturbed." *See* 197 Ariz. at 3, ¶ 8. Because the State presented no proof Prosise actually disturbed the alleged victim, this court accepts jurisdiction of this special action and grants relief by vacating the conviction and sentence.

## FACTUAL AND PROCEDURAL HISTORY

**¶3**　　　　The State charged Prosise with one count of "seriously disruptive behavior" in violation of § 13-2904.A.1, and one count of threatening or intimidating in violation of § 13-1202.A.1. The charges stemmed from an interaction between Prosise and Levi Guffey, a Forest Service supervisor, in the rear parking lot of the Chino Valley Ranger Station in April 2018.

**¶4**　　　　At the bench trial in Chino Valley Municipal Court, the evidence showed Prosise was irate because the Forest Service had closed a road as a fire-prevention measure. Prosise drove into the front parking lot of the Ranger Station, exited his truck, and walked towards the front door. Prosise stopped briefly at the front door without trying to enter the building. He then returned to his truck, gesturing towards the front door as he walked back, and drove out of the parking lot. Guffey heard Prosise

shouting in the front parking lot even though Guffey was in the rear parking lot, but he could not make out what Prosise was saying. Prosise was in the front parking lot for approximately one minute.

¶5        Prosise then drove around to the rear parking lot, where he confronted Guffey about the road closure. Prosise remained in his truck, and Guffey stood on a raised porch behind a bannister. Guffey testified Prosise was "irate," used profanity, and spoke in an "elevated voice."

¶6        Asked to specifically recount what Prosise said, Guffey could only remember Prosise "threatening to shoot anyone who tried to stop him" from reopening the road, but Prosise never identified the specific road or when and where it was closed. Guffey conceded some residents have a legitimate safety concern about public access to government roads during fire season. The forty-second interaction "ended pretty shortly after that." Guffey then entered his office and telephoned his supervisor, who told him to contact the Chino Valley Police Department. Guffey testified he contacted his supervisor as a matter of "due diligence," not because he feared for his personal safety.

¶7        Guffey said his position with the Forest Service required him to "deal with irate individuals quite often. Um, nine times out of ten it's something that I can't exactly help them with anyway. So, I was used to that." Guffey could not "recall [Prosise] ever saying 'you' or threatening directly at me." He agreed Prosise's statements were "directed at an unknown person, at some unknown time, at an unknown location." Though Prosise used profanity and a raised voice, Guffey said Prosise displayed no signs of physical aggression toward him. Guffey testified he was not provoked to respond and he did not feel victimized.

¶8        Prosise did not testify. His only witness was a friend who had been with him in his truck during the confrontation. The friend testified Prosise did not threaten to shoot anyone, but only asked who had the authority to close roads and then said, "one of these days somebody is gonna get shot out there, over this."

¶9        The municipal court found Prosise guilty on both counts. On appeal, the superior court reversed Prosise's threatening or intimidating conviction for insufficient evidence but affirmed Prosise's disorderly conduct conviction. Prosise filed a timely petition for special action relief from his remaining conviction.

**SPECIAL ACTION JURISDICTION**

**¶10**        Special action jurisdiction "is highly discretionary" but may be appropriate "when no 'equally plain, speedy, and adequate remedy by appeal' exists." *State ex rel. Romley v. Fields*, 201 Ariz. 321, 323, ¶ 4 (App. 2001) (quoting Ariz. R.P. Spec. Act. 1(a)). Jurisdiction is also appropriate "in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again." *State ex rel. Romley v. Martin*, 203 Ariz. 46, 47, ¶ 4 (App. 2002).

**¶11**        "Because [Prosise] does not question the validity of the statutes under which he was convicted, a special action is his only means to seek relief." *See Guthrie v. Jones*, 202 Ariz. 273, 274, ¶ 4 (App. 2002); *see also* A.R.S. § 22-375. "Additionally, the petition raises legal questions of first impression and statewide importance that could recur in other cases and evade appellate review." *See Hiskett v. Lambert in & for County of Mohave*, 247 Ariz. 432, 435, ¶ 10 (App. 2019). This court, therefore, exercises its discretion and accepts jurisdiction.

**ANALYSIS**

**I.    When the State identifies a specific victim of seriously disruptive behavior charged under A.R.S. § 13-2904.A.1, *Julio L.* controls the analysis.**

**¶12**        This court analyzes the statutory requirements *de novo* but reviews the facts established at trial in the light most favorable to sustaining the verdict. *See State v. Rushing*, 243 Ariz. 212, 216 n.2 (2017); *State v. Cope*, 241 Ariz. 323, 324, ¶ 5 (App. 2016).

**¶13**        Prosise was convicted of disorderly conduct under § 13-2904.A.1, which provides in relevant part:

Disorderly conduct; classification

A. A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:

1. Engages in fighting, violent or seriously disruptive behavior[.]

**¶14**        In *Julio L.*, a high school student was adjudicated delinquent for "seriously disruptive behavior" under § 13-2904.A.1, the same charge

the State brought against Prosise here. *See* 197 Ariz. at 2, ¶ 4. The student refused his school principal's request to step outside a classroom, told the principal "F––– you," "then kicked a plastic molded chair next to him, which tipped over but did not strike anyone." *Id.* at ¶ 3.

**¶15**      The Arizona Supreme Court held that when one is charged with disturbing the peace of a specific individual, "the [S]tate must prove that [the individual's] peace was indeed disturbed." *Id.* at 3, ¶ 8.[1] Further, such conduct "does not become criminal under our current statutes unless it disturbs the peace of *someone* by *seriously disrupting something.*" *Id.* at 4, ¶ 13 (emphasis added). Because the principal "was not assaulted, did not feel threatened, was not provoked to physically retaliate, and did not feel the need to protect herself," the Arizona Supreme Court vacated the student's adjudication. *Id.*

**¶16**      Although *Julio L.* addressed the precise charge at issue here, the State argues its reasoning does not apply because the accused was a juvenile. Contrary to the State's contention, *Julio L.* expressly referenced its application to adult charges, saying "[o]ur laws do not make criminals out of *adults or juveniles* just because they act offensively or rudely or lack respect and control*." Id.* (emphasis added).

**¶17**      More broadly, the State urges this court to disregard *Julio L.* in favor of *Miranda*, in which Arizona's Supreme Court addressed a disorderly conduct conviction based on the discharge of a weapon. *See* 200 Ariz. at 68, ¶ 3; A.R.S. § 13-2904.A.6 ("[r]ecklessly handl[ing], display[ing] or discharg[ing] a deadly weapon or dangerous instrument."). The issue in *Miranda* was whether disorderly conduct under § 13-2904.A.6 is a lesser-included offense of aggravated assault with a deadly weapon or dangerous instrument under §§ 13-1203.A.2 and 13-1204.A.2.

**¶18**      Earlier decisions by this court had held disorderly conduct was not a lesser-included offense of aggravated assault because disorderly conduct required proof the victim "was in fact at peace when the conduct occurred"—an element not required of aggravated assault. *See Miranda*, 200 Ariz. at 68-69, ¶¶ 4-5 (citing *State v. Cutright*, 196 Ariz. 567 (App. 1999), and *In re Maricopa County Juvenile Action No. JV133051*, 184 Ariz. 473 (App. 1995)). *Miranda* rejected that reasoning: "[T]he statute defining disorderly conduct does not require that one actually disturb the peace of another

---

[1] *Julio L.* said an objective standard is appropriate when a defendant is charged under § 13-2904.A.1 with disturbing the peace of a neighborhood. *See* 197 Ariz. at 3, ¶ 8 (distinguishing *State v. Johnson*, 112 Ariz. 383 (1975)).

through certain acts. Rather, the statute requires the commission of certain acts 'with intent to disturb the peace . . . or with knowledge of doing so.'" 200 Ariz. at 69, ¶ 5 (quoting subsection 13-2904.A) (alteration in original). The State argues this statement in *Miranda* effectively rescinded the rule announced in *Julio L.* requiring the State to prove the defendant actually disturbed the victim under § 13-2904.A.1.

**¶19**        When *Miranda* held the relevant paragraph "does not require that one actually disturb the peace of another through certain acts," it was deciding only the issue before it—whether one could be convicted of disturbing the peace of another without regard to the victim's prior state of mind. *See* 200 Ariz. at 69, ¶ 5. *Miranda* also expressly disapproved this court's decisions in *Cutright* and *No. JV133051* but did not even mention *Julio L.*, its own decision of less than a year earlier. *See id.*

**¶20**        From the Arizona Supreme Court's disapproval of *Cutright* and *No. JV133051*, and its silence on *Julio L.*, this court infers it did not intend to upset or alter the principle announced in *Julio L.* And this court is "bound by the decisions of the Arizona Supreme Court and [has] no authority to overrule, modify, or disregard them." *State v. Thompson*, 194 Ariz. 295, 298, ¶ 20 (App. 1999) (internal quotation omitted). Further, no one could reasonably dispute the *Miranda* victims' peace was in fact disturbed—the defendant "emerg[ed] from behind a dumpster with a gun in his hand" and fired multiple shots at them. *See Miranda*, 200 Ariz. at 69, ¶ 6.

## II.    The State did not produce sufficient evidence to support Prosise's conviction.

**¶21**        This court reviews sufficiency of the evidence claims *de novo*. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). This court will resolve "any conflicts in the evidence against the defendant" and views the facts in the light most favorable to supporting the verdict. *Id.* This court will only reverse if the verdict is not supported by substantial evidence. *State v. Tucker*, 231 Ariz. 125, 138, ¶ 27 (App. 2012). "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Pena*, 235 Ariz. at 279, ¶ 5 (internal quotations omitted). The issue then is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Tillmon*, 222 Ariz. 452, 456, ¶ 18 (App. 2009).

**¶22**        Under *Julio L.*, the State needed to show Guffey's peace "was indeed disturbed," by "seriously disruptive behavior . . . of the same

general nature as fighting or violence or conduct liable to provoke that response in others and thus to threaten the continuation of some event, function, or activity." *See* 197 Ariz. at 3-4, ¶¶ 8, 11. The evidence presented at trial failed to establish the elements.[2] *Tillmon*, 222 Ariz. at 456, ¶ 18.

**¶23**     First, the facts are not in dispute. Guffey was not, in fact, disturbed by Prosise's angry words. Guffey is a Forest Service supervisor with fourteen years' experience who "deal[s] with irate individuals quite often." He testified Prosise did not threaten him and Prosise's comments were "vague" rather than personal. Guffey neither felt victimized nor was he provoked to respond violently. As with the school principal in *Julio L.*, nothing in this record allows a rational trier of fact to conclude Guffey's peace was disturbed by what Prosise said. *See* 197 Ariz. at 3, ¶¶ 8-9.

**¶24**     Second, Prosise's behavior was not "seriously disruptive." Neither Guffey's work duties nor the functioning of the Ranger Station were "disturbed or affected by [Prosise's] cursing or" yelling. *See id.* at 3, ¶ 8. Of note, the Ranger Station was closed at the time. The evidence shows the encounter with Prosise lasted approximately forty seconds and the only people present were Guffey, Prosise, and Prosise's friend. Guffey did not call his supervisor in fear, but rather as a matter of "due diligence." He reported the encounter to the police only at his supervisor's direction. Further, Guffey testified he was used to encountering irate individuals in his job.

**¶25**     As in *Julio L.*, this court "must keep in mind the difference between civil and criminal conduct." *See id.* at 4, ¶ 13. To the extent Prosise had a legitimate concern about road closures, his method of expressing it cannot be condoned and should not be disregarded. *See id.* To that point, this opinion neither suggests Guffey was not justified in contacting his supervisor and the police, nor concludes Prosise's conduct—if directed to another individual who might have interpreted it differently—would be categorically insufficient to support a disorderly conduct conviction.

**¶26**     In summary, even viewing the facts of this case in a light most favorable to sustaining the verdict, the State's evidence failed to establish Prosise engaged in disorderly conduct. *See Tillmon*, 222 Ariz. at 456, ¶ 18; *Julio L.*, 197 Ariz. at 3-4, ¶¶ 8, 11. In fact, the Arizona Supreme Court's summary of events in *Julio L.* is equally accurate here: "In the present case, [Guffey] was not assaulted, did not feel threatened, was not provoked to

---

[2] Because the State failed to meet its burden, this court need not address Prosise's First Amendment arguments.

physically retaliate, and did not feel the need to protect [himself]." *See id.* at
¶ 13.

**¶27** With no basis on which a rational trier of fact could find in the State's favor, this court must reverse Prosise's conviction. *See Tillmon*, 222 Ariz. at 456, ¶ 18.

## CONCLUSION

**¶28** For the foregoing reasons, the superior court committed legal error when it affirmed Prosise's conviction for disorderly conduct. Accordingly, this court accepts special action jurisdiction and vacates Prosise's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA

8